Our first case this morning is HD Silicon Solutions v. Microchip Technology, 2023-1397, Ms. Brooks. Good morning, your honors, and may it please the court. My name is Sarah Brooks, and I'm here representing the appellant HD Silicon Solutions. We are here today on the 033 patent, which is titled Metal Stack for Local Interconnect Layer, and claims a method of forming a local interconnect by depositing a first film and a second film. We are here today with four issues on appeal. The first issue is one of clean construction, which, as this court knows, is reviewed de novo. The term being construed is comprising tungsten. The claim language recites a first film comprising titanium nitride. What is your proposed construction of the term? Our proposed construction is that comprising tungsten does not include a compound of tungsten. Microchip's proposed construction is that it includes... What about your proposed construction? When I read it below, you have interpreted it to mean, this is page 8392 of the appendix, to mean that it must have at least the element tungsten, right? That's correct, your honor. And that's what the board said your construction was, right? Right. I'm having a hard time understanding how your construction helps you, because if it's at least the element tungsten and something else is added to it, then it might be a compound. So your construction seems broad to me. It seems broad, your honor? Yes. The way our expert... It's broader than what you seem to be arguing now. Well, your honor, the way our expert had interpreted it, who helped us with the claim construction, was that there could be other minute particles or whatnot, that when you deposit the element tungsten, it wouldn't necessarily be pure tungsten. But our interpretation of comprising tungsten, based on the specification, the file history, the claim language, is that when the applicant meant for a compound to be used, it said so, like comprising titanium nitride. Why did you use terminology such as consisting of tungsten if you wanted to have such a limited interpretation of it? You mean comprising tungsten? Well, she used the terminology. Oh, I get it. I asked why didn't you use terminology like consisting of tungsten instead of comprising tungsten if you want a more limited interpretation. Why did the applicant... Yes. Well, again, we think that the specification and the intrinsic record is clear, right? So they say comprising titanium nitride. The applicant did not say comprising titanium, which under microchips interpretation could have included a compound. Isn't this a question of the meaning of comprising? Comprising normally in patent law means what is stated but not limited to. Is it your view that it doesn't have to be that, that it is context dependent? No, Your Honor, and thank you for asking that question. We are not disavowing what the term comprising means, and you're correct that it has a meaning in drafting patents, right? It means including but not limited to. So it's really an issue of what the term tungsten means, and we do not think that tungsten means a compound of tungsten. But what if it's comprising tungsten, meaning at least tungsten, and then you have tungsten in something else? That goes back to your first question, Your Honor, right, which is that there could be other minute elements deposited with the element tungsten. How is a person of ordinary skill in the arts supposed to know that when you say at least elemental tungsten that you only mean minute additions from comprising? How is someone supposed to understand comprising as you use it to mean just a little bit of something else? Well, so if a person of ordinary skill read the specification, and Michael Chip's expert agreed that reading the specification, the stated intent of the tungsten layer is referring to the metal tungsten or the element tungsten. So, for example, the patent advises that tungsten was chosen for its low resistivity. That means the element tungsten or the metal tungsten. And another place in the specification— I totally understand. Your point is that in the preferred environment, it's elemental tungsten. I agree with you on that. I'm just trying to understand what your interpretation is of comprising in your specification. And then I'm trying to figure out if a person of ordinary skill in the art has— if it's clear and unmistakable that that's the meaning that should be ascribed to the claim term. Understood, Your Honor. I mean, again, we think that the term tungsten was defined— you know, Michael Chip says that it wasn't defined in— But you don't say tungsten in your claim. You say it comprises tungsten in your claim. So you've got to focus on both of those. Right. So, you know, normally if someone was going to say tungsten plus a little bit of something else, they might say assisting essentially of tungsten, right, going back to Judge Cunningham's question. So how—why not use the appropriate language that patent attorneys have used for years in order to make sure it's very clear that you're requiring tungsten and it's okay if there's a little bit of something else? I understand your question, Your Honor, and I'm not sure I have a good response for you other than that we think it's clear to a person of ordinary skill in the art reading the entirety of the file history, the specification, and the claim language that they did not intend a compound of tungsten to be used. And so the first issue is comprising titanium nitride. Again, they didn't say comprising titanium. The specification talks about tungsten as a metal, as an element, that it was chosen for the low resistivity, that it was a stable material, that it remains probable. These are all qualities of tungsten, the metal. And I think it rises above— Just to confirm, it sounds like you are construing comprising in both the preamble and the body of the claim to mean the same thing, including but not limited to. The word comprising, I'm asking. Including but not—yes, correct. That's correct. And then you were talking us through some of your purported intrinsic support for your more narrow view of what tungsten should be. Can you—maybe we can walk through the column and line numbers on some of that as you continue on this part of the argument. Sure. So the first thing that I mentioned, Your Honor, was the claim language itself. It's claim one. It talks about comprising titanium nitride. And so we contrast that with comprising tungsten and think that when the patentee meant a compound to be used, it said so, right? Comprising titanium nitride versus comprising tungsten. So it didn't intend a compound to be used there. The next point I made, Your Honor, was that the patent specification advises that tungsten was chosen for its low resistivity. This is at column three of the patent. It's Appendix 77. Now, like I said, this is unique to tungsten as a metal, not a compound of tungsten. The 033 patent cites tungsten as a stable material. A microtrip expert agreed that when reading these qualities of tungsten in the specification, that the applicant was referring to tungsten, the metal. And then finally, that the tungsten remains probable. That, too, is a quality of tungsten, the metal, the element, not a compound of tungsten. Is there any evidence in the record that a person of ordinary skill in the art would see this and say that where it says tungsten is also a chemically stable material, even though you've claimed comprising tungsten, you should know that it should be limited to tungsten because some sort of tungsten compound would not, in fact, be chemically stable? Well, there is at Appendix 3117 through 3118, which I believe is the deposition transcript of Dr. Lee, microtrip's expert.  So he says it's taken in isolation the sentence indicating that the material that the inventor was referring to, one could say, is elemental tungsten. So microtrip's expert referring to the claim or referring to the specification?  I agree that the word tungsten is used in the specification as referring to elemental tungsten. I think your harder issue is whether comprises tungsten as referring only to elemental tungsten. I understand your question, Your Honor. And, you know, there is no compound of tungsten, and microtrip agrees, referenced anywhere in the file history, the specification, or the claims themselves. And so we do think that the applicant intended for comprising tungsten to not include a compound of tungsten. If you have rebuttal time, you can continue or save it. I would just very quickly, I guess, eat into my rebuttal time. I wanted to touch on the second issue on appeal, which is whether a person of ordinary skill in the art would be motivated to combine Trivedi and Jew. And Trivedi, with its two layers, does not disclose any thickness of its layers. And microtrip uses Jew to use the thicknesses disclosed in Jew's layers and applies them to Trivedi's layers. But Trivedi, I'm sorry, Jew, has a tungsten nitride layer and a tungsten layer. And importantly, Jew cautions against the formation of tungsten silicide, which Trivedi has. Jew says that the formation of tungsten silicide results in the creation of a higher resistance material and degradation in performance. Now, despite this caution away from tungsten silicide, microtrip advocates that a person of ordinary skill in the art would use the thickness of Jew's tungsten layer and apply it to Trivedi's tungsten silicide layer. This argument does not make sense. And I would just submit in conclusion that microtrip has only presented evidence that the combination could be made and has not presented evidence of why the combination would be made or pointed to anything within those references themselves that would support their combination. And given that Jew cautions away from the formation of tungsten silicide, we don't think they've met their burden and there's not substantial evidence to support that combination. Thank you. We will save your time for you. Mr. Shuman. Good morning, Your Honors. May it please the Court. Brett Shuman on behalf of Microtrip Technology, Inc. I'll start with the clean construction issue, which consumed most of the time with Ms. Brooks. I won't repeat what's in the papers. Obviously, microtrip agrees that comprising tungsten should be interpreted in the normal and ordinary sense, as you said, Judge Lurie, and that it includes compounds of tungsten, such as tungsten silicide. The argument that Ms. Brooks was making is that no compound of tungsten is recited in the patent specification and, as has been pointed out, when they were able to mention titanium, they mentioned a full compound, titanium nitride, and there's a statement in the patent that tungsten is chemically stable, which pretty much suggests that they're talking about the elemental tungsten, because there are no compounds disclosed, and who knows about the stability of unstated compounds? I'll try to address each of those, Your Honor. Certainly, if I were here, if the roles were reversed and we were here on an infringement finding or a judgment and I was the one arguing that these broad claims comprising tungsten should be limited to elemental tungsten, I think I know exactly what all the arguments would be. Elemental tungsten is not mentioned anywhere. To Judge Stoll's point, the distinction that Ms. Brooks was trying to make, it can include at least elemental tungsten is a broad construction they proposed that doesn't actually help them. At least elemental tungsten can include tungsten plus other materials. Can I ask you, though? Yes, Your Honor. You do agree that the specification's reference to a film of tungsten is actually referring to elemental tungsten, right? We're not going to start requiring people who draft patent applications to have to insert the word elemental before something on the periodic table, are we? Well, I don't think so, Your Honor. But I also don't agree that the patent as written right now as it exists is limited to elemental tungsten. I understand. I just was asking narrowly. I think it's really hard for you to say no to this question, which is whether when the specification refers to a layer of tungsten, whether that is referencing elemental tungsten. That is an embodiment, for sure. But yes or no?  Okay. Yes. I want to make this point, though. There's a couple of important points that the PTAB made that are not addressed by HD Silicon Solutions. The summary of the invention, column 1, line 54, says the second film may comprise tungsten for example. That is further expansive language. That means that this patent, these claims, are not limited to elemental tungsten. The second film comprises tungsten for example. And the PTAB and the final written decision rely on – It says may comprise for example, right? Correct. I noticed that. May comprise for example. Which means it also may comprise other things besides just tungsten, even if we take the preferred embodiment to be referring to elemental tungsten. By your argument, it might include sodium chloride or calcium carbonate, right? Not for tungsten. Not for comprising tungsten, your Honor. Well, I guess in May, and for example. So that suggests things other than tungsten by your argument. Well, except for the claims, all of them, and the two independent claims say comprising tungsten. So there could be other divisionals or CIPs that talk about those other elements. But these claims talk about tungsten. What is your best intrinsic support? I think you point us to one of the pieces of best intrinsic support, the support of your own construction. But is there anything else you want us to look at, background prosecution history-wise, to support you? Well, in the patent itself, the intrinsic record, the written description, and the prosecution history, the file history, never talks about elemental tungsten, which is their argument. It's never discussed there. I have pointed you to- If it mentions another tungsten, any tungsten compound. That is fair, your Honor. As I pointed out, the sum of the invention, which I think this Court's precedents say describes the whole of the invention, not just a single embodiment. It says it may comprise tungsten, for example, so therefore it also may comprise tungsten compounds. I do want to touch on the point, though, that counsel made moving outside of the extrinsic evidence, excuse me, moving outside the intrinsic evidence to the extrinsic evidence. There was some discussion with Ms. Brooks, and it's in the briefs, that while the particular description, the description in the patent, can only be referring to elemental tungsten. That is not supported by the record, and that is not- It is an overstatement of the record. The HD silicon solution relies on their expert, Dr. Nade, paragraph 48 of his declaration, which is in the appendix at 3069. They say this repeatedly, and I think this is what Ms. Brooks was relying on. What he actually says there is, for example, the inventors state that tungsten has low resistivity and is a stable material. These properties are unique to the element tungsten and not necessarily met by a tungsten compound, not necessarily met by a tungsten compound. They could be met by some tungsten compounds, and Dr. Lee goes on at some length about that in his declarations as well. So you have the intrinsic evidence, which is not limited to elemental tungsten, and then you have the extrinsic evidence here, where their own expert married that with at least elemental tungsten, comprising in the claim, at least elemental tungsten, which is their broad construction, which I don't think helps them. And then they have put an expert testimony that says, well, these properties, sure, they're properties of elemental tungsten. They're not necessarily met by a tungsten compound. They could be. I also want to point out, this argument about claim construction is primarily directed to the Trivedi reference, which is the primary reference. I want to ask you just one question about the patent owner's proposed claim construction. So their proposed claim construction is at least tungsten, right? Elemental tungsten. I think that's their point. At what point do you think elemental tungsten becomes a compound? I mean, you know, as the non-chemical person up here, I am wondering where the line is. Speaking to another non-chemical engineer, Your Honor, I'll try my best. I think the line they're trying to draw is not supported anywhere by the intrinsic or the extrinsic evidence. Ms. Brooks was explaining, I think I took a note, it could include maybe some impurities or some other particles, some other minute particles. That's just not anywhere in the intrinsic record or even in the extrinsic evidence. So they're really dancing on the head of a pin here. The extrinsic evidence on the page, you took us to 3069, right? So if you go on past those sentences you pointed us to, it talks about the impurities such as oxygen. He says that it's hard to get pure tungsten, but it's not intrinsic evidence and it certainly doesn't support a construction that excludes other elements or compounds besides what he references there in the extrinsic evidence. Do you want to address obviousness at all? I will, Your Honor. Before I move on to that, I just want to make one other point that the PTAB made in its final written decision and its judgment that is also not addressed by HDSS. This is what I was getting to when I was turning to Trivedi. HD Silicon Solutions says that Trivedi only teaches that the second film of the 033 patent does not teach, they say that it does not teach a second film of tungsten. It's not accurate. Trivedi has two methods, a first method which is tungsten silicide and a second method which is tungsten. And the PTAB picked up on this and cited it in support of its decision on ground one, which is the ground that is based solely on Trivedi, and they don't address that. And if you look at Trivedi, it specifically says we have one method, which is tungsten silicide and titanium nitride, and we have another method which is tungsten, titanium nitride. So I also don't think that the claim construction argument particularly matters much when the primary reference itself teaches tungsten as the second film, and the PTAB relied on that, and there's no argument in either of HD Silicon Solutions' briefs to the contrary. The briefs, of course, take on every one of the obviousness combinations, Your Honor, but I'm just going to address the particular one that Ms. Brooks chose to focus on here, and that's the combination of Trivedi and Jew. So this is a substantial evidence question, and so the standard of review is, of course, different than the claim construction, and the court here looks for whether there's evidence in the record supporting what the PTAB found, which is that a person of ordinary skill in the art would be motivated to combine Trivedi and Jew. The argument I heard here today, which is the primary argument in the papers, is that Jew supposedly teaches away from Trivedi because it cautions against forming tungsten silicide. That is extensively addressed in the declarations of microchips expert Dr. Lee, and that is extensively addressed in the PTAB's final written decision. Jew is an applied materials patent describing oxidization, selective oxidization of layers, and so the patent, of course, is quite focused on, within a single tool, not oxidizing in a way that breaks down a barrier layer and unintentionally creates tungsten silicide. As Dr. Lee explained and as the PTAB found, that is not the portion of Jew that forms the basis for the combination. In the course of describing the invention of Jew, which is a selective oxidization, it describes a metal stack that goes into the chamber, and it's that description of the metal stack that Dr. Lee relies on for his obviousness combination. He says, look, Trivedi has the same two layers, but Trivedi doesn't talk about the thicknesses, and he's a person of ordinary skill in the art, and he understands that you need to know how thick each of these layers has to be, and he says, look, on columns four and five of Jew, having nothing to do with selective oxidization, it describes a metal stack of titanium nitride and tungsten and the thicknesses, and he explains the motivation to combine, which the PTAB credits, which is to use the same chamber manufacturing efficiency. So when you're looking for substantial evidence in the record, you have multiple declarations from Dr. Lee providing the motivation to combine and explaining why, according to him, and this is his, it's numerous places, there's a lot of material in the record on this, but if you go to appendix 1152, it's his reply declaration at paragraph six. He addresses, while Jew describes tungsten silicide as undesired, that is relevant when the goal is to, excuse me, to form a tungsten layer, and I won't read his entire paragraph, but he goes on to say, well, that's not particularly relevant to me or to Trivedi because Trivedi wants to form a tungsten silicide layer by design, and in its final written decision, the board discusses this extensively, and it says, look, that's the key. The key here is Jew is talking about the unintentional formation of tungsten silicide as a byproduct of an oxidization process where we don't want to form tungsten silicide, so on a substantial evidence appeal, which this is, there is clearly substantial evidence in the record in the form of multiple declarations from Dr. Lee, and the PTAB discusses this extensively, which is what I think this court looks for, make sure that the PTAB adequately considered the extrinsic evidence, excuse me, adequately considered the evidence. I've got a minute left, but I guess I will end on this. The argument is that the PTAB, the administrative law judges used improper hindsight and focused on how these references could be used together and not why a person of ordinary skill in the art would. I've already covered the evidence supporting why a person of ordinary skill in the art would combine the references, but I do want to point out that the PTAB did not invalidate Claim 8, and the PTAB did not invalidate Claim 8 because the PTAB felt for that claim there was not sufficient evidence of a motivation to combine and cited some of the very same cases against my client, Microchip Technology, that Ms. Brooks and H.T. Silicon Solutions say the PTAB and we ignored on the rest of the claims. So my point here, of course, is that we are not talking about runaway PTAB judges who did not appreciate the relevant law and the standards. Rather, they went through and where they found a sufficient motivation to combine, they found it, and where they didn't, they didn't. I think I'm out of time. Thank you, counsel. We have your case. Thank you, Your Honor. Ms. Brooks has some liberal time. Thank you, Your Honors. The first point I'd like to address is Mr. Schuman says that nowhere in the patent was the word elemental used. That, I think, misses the point, right? The patentee doesn't need to use the word elemental for a person of ordinary skill in the art to understand that all the references in the specification are referring to the metal tungsten. The second point I wanted to make was in response to a question from Judge Stoll, asking about why the word comprising was used in the claim language if a compound wasn't intended to be used. It was something essentially of or composed or formed of some other language that was more limiting. So I did want to point, Your Honor, to Claim 11 of the 033 patent, which does use the word comprising but then mentions a fluorine-based etchant, which in the specification is a fluorine-based etchant the patentee says could be a sulfur hexafluoride. So we again think that the patentee was clear when it intended a compound to be used. It said so and even used the word comprising not only with the comprising titanium nitride, which was a compound, but in other examples in the claim language. The example close to your point, too, differs in some ways from the Claim 1 that we were looking at because it just has at least the comprising part in the preamble as opposed to what I'm going to call the remaining body of the claim. Yeah, it also does have the fluorine-based language, right? So if they had intended a compound of tungsten, they could have said a tungsten-based or comprising tungsten-based film, for example. They didn't say that. I wanted to briefly address in the remaining seconds here Microtrip's point about tungsten psilocyde in Jew, that Jew described that it wasn't favorable to form tungsten psilocyde versus Trivedi intentionally formed tungsten psilocyde. We think that, again, is an argument that you could ignore the teaching away in Jew, it doesn't provide a reason why the two references, Jew and Trivedi, would be combined. And in fact, just briefly, their expert, Dr. Lee, provides only conclusory statements as to why those two references would be combined, especially on the thickness issue. He says that a person of ordinary skill in the art would not be dissuaded. This is Appendix 1176, paragraph 63 of Dr. Lee's declaration, and this is in relation to their argument about ignoring the tungsten psilocyde. That a person of ordinary skill in the art would not be dissuaded and would therefore be motivated to combine Trivedi and Jew. We simply just don't have an answer as to why those combinations would be made, saying that they wouldn't be dissuaded and therefore they would be motivated is not an appropriate analysis. I'm out of time, Your Honor, but... Last question. But here it appears to be just the reply declaration. I mean, was there potentially additional information in the original declaration that is not, in your opinion, as conclusory? There was also, this might be the same declaration, Your Honor, but I did have a note on Appendix 1179, paragraph 69, and I believe this is the same analysis as his opening declaration, and the only analysis I found was that Dr. Lee says that Trivedi discloses no thicknesses and Jew provides functional ranges. This is the same citation that the board makes in their final written decision. So just the fact that Trivedi has no thickness and Jew does provides the motivation to combine, but we would submit, Your Honors, that when one, because Jew is tungsten and applying it to tungsten silicide, there isn't a motivation to combine when the two materials in the two films are different. Thank you, counsel. Thank you. Thank you. Both counsel, your case is submitted. Thank you.